MARKS v. CITY OF DETROIT.

1. CONSTITUTIONAL LAW—DUE PROCESS—SPECIAL ASSESSMENT FOR BENEFITS.

Where, before an assessment for benefits accruing to land became a lien, the property owner was given two opportunities to be heard, first, before the board of assessors, and, second, on appeal from the action of the board to the common council, the due process of law provision of the Constitution was not offended, although no notice to appear before the council in relation to the matter of determining the assessment district and the amount to be assessed thereon was given.

2. MUNICIPAL CORPORATIONS—TAXATION—SPECIAL ASSESSMENTS—VALIDITY.

In the absence of evidence tending to show that any consideration other than that of benefits specially derived from the widening of a street entered into the fixing of the proportionate amount of assessments therefor on the various parcels of land in the assessment district, it cannot be said that the assessments were arbitrarily made.

3. Same—Detroit Charter—Assessment for Benefits Conclu-
    sive in Absence of Fraud, Bad Faith, or Use of Inequitable
    Plan.

> To what extent adjoining property is enhanced in value by the
> widening of a street is left to the judgment of the common
> council and board of assessors under the Detroit city charter,
> and, in the absence of fraud, bad faith, or the following of a
> plan incapable of producing equality, their judgment is con-
> clusive.

Appeal from Wayne; Dunham (Major L.), J.,
presiding. Submitted January 17, 1929. (Docket
No. 162, Calendar No. 33,914.) Decided March 29,
1929. Rehearing denied June 20, 1929.

Bill by Pauline M. Marks against the city of De-
troit to set aside a special assessment on real estate.
From decree for defendant, plaintiff appeals. Af-
firmed.

*Oxtoby, Robison & Hull,* for appellant.

*Walter Barlow* and *Arthur F. Lederle* (*Clarence
E. Wilcox,* of counsel), for appellee.

McDonald, J. This suit was brought to set aside
a special assessment levied against the plaintiff's
lands for benefits claimed to have accrued thereto
from the widening of Madison avenue in the city of
Detroit, Michigan.

In the condemnation proceedings, the jury
awarded the plaintiff $21,850 for damages to her
property. Of this amount $14,800 was for the value
of land actually taken, and $7,050 was for damages
to her buildings. She accepted payment of the
amount awarded, and deeded the condemned land to
the city. The total damages awarded to the various
parties in interest was $774,497.56. The common
council determined that two-thirds of this amount
should be paid by assessment on a special assess-

ment district according to benefits and the balance should be paid by general taxation. Thereafter the board of assessors prepared the assessment roll. The plaintiff and all others interested were given a hearing on their assessments, after which the roll was signed and reported to the common council and then by resolution confirmed in accordance with the charter. The plaintiff's property was in the assessment district and was assessed for benefits in the sum of $15,226.08. To restrain the enforcement of the assessment the bill was filed. From a decree for the defendant, the plaintiff has appealed.

It is first contended by the plaintiff that the procedure provided by the Detroit city charter which was followed by the common council and the board of assessors in levying this special assessment is in violation of the due process of law provisions of the Constitution of this State and of the United States, in that it denies to the property owner a hearing on the fixing of the special assessment district and of the proportion of the cost of the public improvement to be assessed thereon.

The provisions of the city charter providing for the taking of private property for public use require the district to be fixed by the common council before the condemnation suit is instituted. The next step in the procedure comes after the award of the jury and after judgment is confirmed and certified to the common council. Having then before it the cost of the public improvement, the common council shall by resolution determine what proportion thereof shall be assessed against the property in the special district previously fixed. The common council shall then direct the board of assessors to prepare an assessment roll according to the charter, which provides that the assessments shall be in proportion to the benefits which the land "is deemed to acquire by

the improvement." When the roll is completed, notice thereof is given to the public, and for the purpose of their inspection it is retained in the office for 12 days during which time they may be heard as to its revision and correction. It is then signed by the board and reported to the common council, whose duty it shall be:

"To confirm assessment rolls and to sit as a board of review to hear and determine appeals from assessments." City charter, § 13, p. 26.

When the roll is confirmed, the last step in the procedure has been taken. From that time, until paid, the assessments constitute a lien on the premises. In this case all of the applicable provisions of the city charter were fully complied with. The plaintiff was not denied any hearing authorized by the charter. But the charter makes no provision for notice to property owners and a hearing on the question of fixing a special assessment district or on the question of what proportion of the cost of the improvement shall be assessed thereon. For this reason the plaintiff says that it is unconstitutional.

To sustain the constitutional validity of such an assessment, we think it must appear that the property owner has had an opportunity to be heard at some time before the roll is confirmed and the assessments thereon become a lien on the premises. In 3 Cooley on Taxation (4th Ed.), § 1113, p. 2254, it is said:

"To constitute due process of law, the right to a notice or a hearing in some stage of the tax proceedings, before collection, must exist."

And in *Voigt* v. *City of Detroit*, 123 Mich. 547, this court said:

"When the proceeding has reached that stage where it becomes necessary to decide what propor-

tion of the cost of the proposed improvement shall be assessed to any given description of land, there must be an opportunity given to the owner of the land to be heard upon that question.''

In affirming *Voigt* v. *City of Detroit,* the Supreme Court of the United States, in 184 U. S. 115 (22 Sup. Ct. 337), said:

''The contentions of plaintiff in error seem to be based on the assumption that a property owner must have notice of every step of the proceedings. Such assumption is untenable.''

In that case, as here, the plaintiff was complaining that he had no notice to appear before the council in relation to the matter of determining the assessment district and the amount to be assessed thereon.

We conclude that, if before the assessment becomes a lien on the premises the property owner is given an opportunity to be heard on the amount of the assessment, the due process of law provision of the Constitution is not offended.

In the instant case, the plaintiff had two opportunities to be heard: First, before the board of assessors, and, second, on appeal from the action of the board to the common council. In view of these facts, it cannot be said that her property was taken without due process of law.

It is further contended by the plaintiff that there is great inequality in the assessments on the various parcels of land within the district; that all of the land was not ratably assessed according to the benefits; that in some portions of the district the assessments were ''unreasonably and absurdly small,'' and in other portions, particularly where the plaintiff's lands were located, they were ''unreasonably and absurdly large;'' that the assessment on the

plaintiff's property is excessive and was arbitrarily and unjustly imposed by the board of assessors and common council.

In determining the territory benefited by the improvement, the council took in a very large area, two miles in length. The avenue was widened from Randolph street to Gratiot avenue, a distance of three blocks. The plaintiff's property fronts on the northern side of Gratiot avenue in the block between Beaubien and St. Antoine streets, and extends in the rear to Madison avenue. All of the land in this portion of the district was assessed at a uniform rate per front foot, and, on the lots farther removed from the immediate vicinity of the opening, the rate was reduced, depending upon the benefits received. That is the plan which the board of assessors says it followed. In transmitting the assessment roll to the common council, the board said:

"The lands included in the assessment district were assessed in proportion to the benefits specially derived by them from such improvement."

There is no evidence in the record to dispute this statement of the board. It was confirmed by resolution of the council after its examination of the roll for revision and correction. There is a total lack of evidence tending to show that any other consideration than that of benefits entered into the fixing of the proportionate amount of assessments on the various parcels of land in the district. All lot owners were treated alike if they were assessed according to the benefits received from the improvement. We find nothing in the record to justify the belief that the assessments were arbitrarily made.

It is conceded that the plaintiff's land is properly in the district, and that it has received special

benefits from the widening of the street. Her assessment may be too large. But to what extent adjoining property is enhanced in value by the widening of a street is a question on which men may widely and honestly differ. It is a matter of judgment which the charter leaves to the common council and board of assessors and not to the courts. In the absence of fraud or bad faith or the following of a plan incapable of producing reasonable equality, their judgment must be held to be conclusive. What was said in *Brown* v. *City of Grand Rapids,* 83 Mich. 101, is applicable here:

"It is not for this court to set its judgment up in opposition to that of the board of commissioners and the council, and to say that this parcel of land or that is assessed too much or too little. The assessments were to be made according to benefits to each parcel of property, and there is nothing in the record showing that the commissioners did not assess the complainant's lands in accordance with their best judgment."

The record presents no other question which requires discussion. The decree of the circuit court is affirmed, with costs to the defendant.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, POTTER, and SHARPE, JJ., concurred.